# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **EMERETTE HARRIS** | **CASE NO. 6:18-CV-01024** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MAMOU POLICE DEPARTMENT, ET AL** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Pending before the Court is a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted [Doc. No. 4] filed by Defendant Robert McGee, Former Chief of Police of the Town of Mamou. Plaintiff Emerette Harris has filed an Opposition, [Doc. No. 10] to which Defendant McGee has filed a Reply. [Doc. No. 15] For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### I.
### BACKGROUND

This civil rights action arises out of Harris' arrest on or about February 8, 2015, for aggravated assault with a firearm outside the Mamou Superette. Harris was quickly released on bond pending his arraignment and trial. The trial never occurred because the complainant filed an affidavit of non-prosecution and the charges against Harris were dismissed on August 9, 2017.

On August 9, 2018, Plaintiff Emerette Harris filed this lawsuit against the Mamou Police Department (hereafter "MPD"), and former Mamou Chief of Police Robert McGee, in his individual capacity. Harris' Complaint does not clearly set forth the claims he is asserting. Reading the Complaint liberally, Harris asserts claims under 42 U.S.C. § 1983 for violation of his rights granted by the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States

Constitution.[1]  [Doc. No. 1, ¶ 21]  Plaintiff also appears to assert claims for wrongful arrest and wrongful detention under the Fourth Amendment and state law, and malicious prosecution under federal and state law.  According to the allegations set forth in the Complaint, Harris was unlawfully "arrested and/or detained on or about February 7, 2015 for the crime of Aggravated Assault with a Firearm." [Doc. No. 1 at ¶¶ 1, 19, 23]  Although Harris's charges were dismissed on August 9, 2017, his Complaint alleges that "the delay from the time these alleged crimes were supposedly committed until date" caused him to suffer damages in the form of "mental and psychological anguish." *Id.* at ¶¶ 1-2.  The Complaint further alleges that Defendants "wrongfully abused the judicial process," and that Defendants have a "policy, practice and custom of engaging in faulty investigations, false arrests and false imprisonment." *Id.* at ¶¶ 3, 15.  In light of these allegations, Plaintiff seeks an award of "compensatory damages in the amount of $100,000.00, and attorney's fees, along with punitive damages, . . . and court costs. . . ." *Id.* at 6.  Defendant McGee then filed two motions to dismiss: (1) a Motion to Dismiss Penalty, Punitive, or Exemplary Damages [Doc. No. 6] and (2) the present Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted.  [Doc. No. 4]  The Court previously granted Defendant's motion to dismiss Plaintiff's claim for punitive damages.  [Doc. No. 16]

## II.
### STANDARD OF REVIEW

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). In other words, a motion to dismiss an action for failure to state a claim

---

[1] The Complaint does not explicitly state that Defendant is being sued in his official capacity.  Read liberally, however, the Complaint may assert certain claims in Defendant's official capacity.  [*See, e.g.*, Doc. No. 1 at ¶ 13]

"admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Id.* at 161–62. When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)(citations, quotation marks, and brackets omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *(citing Twombly,* 550 U.S. at 555, 127 S.Ct.1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). However, "the court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir.2005).

### III.
### ANALYSIS

### A. PRESCRIPTION OF FALSE ARREST AND FALSE IMPRISONMENT CLAIMS

Defendant contends that Plaintiff's state and federal claims for false arrest and imprisonment have prescribed. [Doc. No. 4-1 at 4, 8] While federal law governs accrual of claims under § 1983, state law governs the limitations period and tolling rules for these claims. The

parties do not dispute that the applicable limitations period in Louisiana is one year. [Doc. No. 4 at 4-5, 6-8; Doc. No. 4-1 at 12-15; Doc. No. 10 at 1] However, the parties disagree on when Plaintiff's claims accrued. Defendant argues that Plaintiff's *federal law* claims for false arrest and false imprisonment accrued, respectively, on the date of arrest and the date of release from imprisonment. [Doc. No. 4 at 5; Doc. No. 4-1 at 12; Doc. No. 15 at 4] Defendant argues that Plaintiff's *state law* claims for false arrest and imprisonment both accrued on the date of arrest and imprisonment. [Doc. No. 4 at 4] Plaintiff appears to argue that his state and federal claims for false arrest and imprisonment, as well as his state law claim for malicious prosecution, accrued on the date his criminal charges were dismissed.[2] [Doc. No. 10 at 1-2] Plaintiff further contends that his false imprisonment continued beyond the time he was released from detention because he remained subject to his conditions of bond. [Doc. No. 10 at 2]

The prescriptive period for a § 1983 claim for false arrest or imprisonment brought in Louisiana is one year. *White v. Gusman*, 347 F. App'x 66, 67 (5th Cir. 2009). A claim seeking damages under § 1983 for false arrest, when the arrest is followed by criminal proceedings, accrues at the time the claimant is detained pursuant to legal process. *Wallace v. Kato*, 549 U.S. 384, 397, 127 S. Ct. 1091, 1100, 166 L. Ed. 2d 973 (2007). A claim seeking damages under § 1983 for false imprisonment accrues when the alleged false imprisonment ends. *Id* at 389. An alleged false imprisonment ends when the legal process commences, such as by arraignment or appearance before a magistrate. *Id.*

---

[2] Plaintiff's Opposition states that the criminal charges against Plaintiff were dismissed "on or about October 25, 2013," which the Court takes to be a typo, as it would place the dismissal of Harris' charges more than one year prior to the arrest described in the Complaint. Minutes of court attached to Defendant's Motion show that the State moved to dismiss the charges against Plaintiff, and the court so ordered, on August 9, 2017. [Doc. No. 4-3 at 51] While the aim of the Court's inquiry at this stage is the sufficiency of the contents of the Complaint, the information provided by Defendant is beneficial to Plaintiff's cause in this instance, as it clarifies the timeline so as to make Plaintiff's claim chronologically correct.

Harris, however, argues that a different accrual date applies to his claims. In that regard, he cites *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) to support his argument that his false arrest and false imprisonment claims accrued when the charges against him were dismissed on August 9, 2017. *Manuel*, however, is inapposite here because that case involved a plaintiff subject to detention after legal process had commenced and, according to the court, was grounded on a wrongful arrest and false imprisonment claim that was more like a malicious prosecution claim. The Fifth Circuit has never recognized an independent federal claim for malicious prosecution. *See Castlellano v. Fragazo*, 352 F.3d 939, 942 (5th Cir. 2003) (holding that "malicious prosecution standing alone is no violation of the United States Constitution."). The Fifth Circuit and the Supreme Court, however, have recognized that a false imprisonment claim that involves "detention *accompanied*…by wrongful institution of legal process" is more akin to a malicious prosecution claim and should, therefore, accrue only when the prosecution ends in the plaintiff's favor. *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) (quoting *Wallace*, 549 U.S. at 390) (emphasis added). Here, there was no detention accompanied by wrongful institution of legal process because Harris was released from custody prior to arraignment and the commencement of the legal process. Accordingly, the *Manuel* rule for accrual does not apply.

Turning to the allegations of the complaint, Plaintiff was arrested on or about February 8, 2015, was detained for an unspecified amount of time, and was then "released until his arraignment and trial," suggesting that Plaintiff was released *prior* to his arraignment and was never detained again. [Doc. No. 1 at ¶¶ 18-21] Therefore, on the basis of the Complaint alone, Plaintiff's Fourth Amendment claim for false arrest accrued on February 8, 2015. Determining when the false imprisonment claim accrued is more challenging because Harris' Complaint omits key facts, such as the date he was released from detention and the date of his arraignment. Nevertheless, the

Complaint is clear that the release was prior to the arraignment, which in turn was prior to the dismissal of the criminal charges on August 9, 2017.[3] Therefore, Harris' federal false imprisonment claim accrued before August 9, 2017. The record reflects that the Complaint was filed on August 9, 2018, more than one year after these federal claims accrued, and therefore each claim had prescribed by the date of filing. Consequently, Defendant's motion is granted as to Harris' federal claims for false arrest and imprisonment.

State law claims for false arrest and imprisonment accrue on the date of arrest and imprisonment. *Eaglin v. Eunice Police Dep't*, 2017-1875 (La. 6/27/18), 2018 WL 3154744. As stated above, Harris alleges that his arrest and imprisonment began on or about February 8, 2015. Accordingly, each of those state law claims prescribed before the date the Complaint was filed. Defendant's motion is therefore granted with respect to Plaintiff's state law claims for false arrest and imprisonment.

## B. CLAIMS UNDER THE FIFTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS

Defendant also seeks dismissal of Plaintiff's claims under the Fifth, Eighth, Ninth, and Fourteenth Amendments. With respect to the Fifth Amendment claims, Defendant argues that the Fifth Amendment does not provide for relief against him because he was never a federal actor during the time period covered by the Complaint. [Doc. No. 4-1 at 8-9] As to the Eighth Amendment, Defendant asserts that Plaintiff fails to plead any facts showing a violation of the Eighth Amendment, given that Harris was released from custody prior to the commencement of legal process. Defendant contends that Harris only makes the conclusory assertion that his Eighth

---

[3] The Court notes that documents attached to Defendant's Motion suggest that Plaintiff's arraignment was set for April 16, 2015 [Doc. No. 4-2 at 24, 26], however, the analysis does not require the exact date Plaintiff was arraigned, as Plaintiff avers that he was released from detention before the charges against him were dismissed.

Amendment rights were violated. [Doc. No. 4-1 at 9] Defendant further argues that the Ninth Amendment does not grant substantive rights that can be enforced through § 1983. *Id.* As to the Fourteenth Amendment claim, Defendant contends that Harris has alleged no facts showing that Defendant intentionally acted in a manner that was arbitrary or shocking to the conscience. [Doc. No. 4-1 at 10-12] Plaintiff does not rebut these claims, but rather asserts that he will seek leave to amend the Complaint to plead these claims with specificity. [Doc. No. 10 at 4] Defendant argues in reply that Plaintiff "cannot plead any facts sufficient to establish" claims under these Amendments, and therefore leave to amend should be denied as futile. [Doc. No. 15 at n.1]

### 1. Fifth Amendment

While the Fifth Amendment to the United States Constitution enumerates several rights,[4] Harris fails to specifically identify which of those rights was or were allegedly violated. [Doc. No. 1 at ¶ 9] The Court construes Plaintiff's statement as a claim that his right against self-incrimination or his right to due process under the Fifth Amendment was violated.[5] Either claim must be dismissed.

The Due Process Clause of the Fifth Amendment applies only to federal actors. *Ristow v. Hansen*, 719 F. App'x 359, 364 (5th Cir. 2018) (*citing Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)). Harris' Complaint makes no allegation that Defendant is or was a federal actor

---

[4] These are (1) the right to be indicted by a Grand Jury indictment prior to being held on a capital, or otherwise infamous, crime; (2) the right not to be put in jeopardy of life or limb for the same offense twice; (3) the right against self-incrimination, (4) the right not to be deprived of life, liberty, or property without due process, and (5) the right not to have property taken for public use without just compensation. U.S. Const. amend. V.

[5] The Complaint contains no assertion that Plaintiff was held on a capital or infamous crime without having been indicted by a Grand Jury, that Plaintiff was put in jeopardy twice for the same offense, or that any property belonging to Plaintiff was taken for public use.

at any relevant time. Therefore, Defendant's motion as to Plaintiff's Fifth Amendment Due Process claim must be granted.

The right against self-incrimination applies to state actors by way of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492, 12 L. Ed. 2d 653 (1964). Plaintiff alleges no facts showing that he was compelled to be a witness against himself in a criminal case. Therefore, to the extent that Harris' Fifth Amendment claim is grounded on his right against self-incrimination, Defendant's motion must be granted and this claim dismissed.

### 2. Eighth Amendment

The Eighth Amendment prohibits "excessive bail...excessive fines...[and] cruel and unusual punishments." U.S. Const. amend. VIII. Plaintiff's Complaint makes no factual allegation challenging his bail or that any fines were imposed. Nor does Harris allege that Defendant imposed cruel or unusual punishment with respect to confinement, or that he withheld medical treatment. Moreover, the Eighth Amendment's cruel and unusual punishment prong applies to *convicted* persons, not pre-trial detainees. *See Bell v. Wolfish*, 441 U.S. 520 (1979). As noted above, the charges against Harris were dismissed before trial. Therefore, Defendant's motion to dismiss as to Harris' Eighth Amendment claim is granted.

### 3. Ninth Amendment

With respect to Harris' Ninth Amendment claim, "[t]he Ninth Amendment does not confer substantive rights upon which civil rights claims may be based." *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 320 (5th Cir. 2008)(*citing Froehlich v. Wisconsin Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir.1999)). Therefore, there is no relief to which Harris is entitled under that Amendment. Defendant's motion as to Plaintiff's Ninth Amendment claim is therefore granted.

### 4. Fourteenth Amendment

Defendant next argues that Harris has not alleged a viable claim under the Fourteenth Amendment of the Constitution. The protections embodied in the Fourteenth Amendment include substantive and procedural due process under the Due Process Clause, equal protection of the law under the Equal Protection Clause, as well as individual rights from the first nine Amendments to the Constitution incorporated to apply to the states under the Due Process Clause. Like his other constitutional claims, Harris merely cites the Fourteenth Amendment without identifying which specific protections of the amendment are the legal basis for his claim. Harris' Complaint contains no allegations that can be fairly construed to state a claim under the Equal Protection Clause. The threshold showing for an equal protection claim is that "two or more classifications of similarly situated persons were treated differently." *Duarte v. City of Louisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (citing *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)). Harris' complaint contains no such allegation. Indeed, his allegations of uniform policies that are apparently applied across the board seem to bely any Equal Protection claim.

Nor do Harris' allegations of wrongful arrest, false imprisonment, and malicious prosecution state a claim under either the substantive or procedural due process prongs of the Due Process Clause. If the conduct alleged falls within the scope of a specific guarantee provided in one the first ten Amendments that make up the Bill of Rights, and the guarantee has been incorporated to apply to the states, then "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 US 1215 (1994) (quoting *Graham v. Connor*, 490 US 386, 395 (1989)). Claims for false arrest and false imprisonment – both before and after legal process – arise under the Fourth Amendment rather than the more general guarantees of the Fourteenth Amendment's Due Process Clause.

*Manuel*, 137 S. Ct. at 919. Accordingly, these allegations do not support an independent Fourteenth Amendment claim.

With respect to the malicious prosecution allegations, courts have held that these allegations do not support an independent Fourteenth Amendment claim. *See Albright*, 510 U.S. at 271. These allegations may support a claim under the Fourth Amendment, but as explained above, Harris cannot state a claim for malicious prosecution under the Fourth Amendment because he was not detained at the time of commencement of legal proceedings. *See Winfrey*, 901 F.3d. at 491. The Fourteenth Amendment does provide protections to pre-trial detainees as far as the conditions and duration of confinement are concerned. *See Hare v. City of Corinth, MS*, 74 F.3d 633, 639 (5th Cir. 1996). However, Harris' Complaint includes no factual allegations challenging either the duration or conditions of his brief confinement. Indeed, Harris bonded out of detention shortly after his arrest.[6] Accordingly, Harris has not stated a Fourteenth Amendment claim based on the duration or conditions of the short period of detention following his arrest.

The procedural due process prong of the Fourteenth Amendment also addresses the fundamental fairness of the trial process. The Complaint specifically references Harris' "speedy trial" rights in challenging the duration of his prosecution and his allegation of unreasonable delay. [Doc. No. 1 at ¶ 21] However, as explained below, Harris' speedy trial rights are protected by the Sixth Amendment. Harris has not stated a claim for an independent Fourteenth Amendment violation based on delays in the prosecution.

---

[6] The Complaint does not detail the timeline between Harris' arrest and his release on bond. Exhibit A to Defendant's motion includes a document purporting to be a public record with a notation that Harris was released on February 9, 2015, which is the day after his arrest according to the Complaint. [Doc. No. 4-2 at 24] Ordinarily a Rule 12(b)(6) motion is confined to the allegations in the complaint. The Court, however, may look to matters of public record, including arrest and release dates reflected on public records.

Harris' Complaint also alleges that he received no notice of the status of his prosecution following his release on bond. While lack of notice may deprive an accused of the opportunity to be heard and participate in his defense, Harris' complaint fails to identify how notice was lacking and how the lack of notice prevented him from being heard and participating in his defense against the charges against him. Harris points to no events in his case, such as motions, hearings, or other matters where he failed to receive proper notice and that this lack of notice prevented him from receiving a fair hearing. As noted above, the question of a fair trial is not at issue because Harris was never tried. In sum, the allegations of Harris' complaint fail to state any claim under the Fourteenth Amendment. Since the Court will grant Harris leave to replead this claim, the Court will deny Defendant's motion to dismiss, without prejudice to Defendant's right to re-urge the motion in the event Harris files amended or supplemental pleadings as to this claim.

## C. 42 U.S.C. § 1981

Defendant requests that Harris' claims under 42 U.S.C. § 1981 be dismissed, arguing that Plaintiff has not pled that he was prevented from making or enforcing a contract on the basis of racial discrimination, nor has he identified any injuries resulting from racial discrimination. [Doc. No. 4-1 at 16] Harris asserts that he will seek leave to amend the Complaint to plead these claims with specificity. [Doc. No. 10 at 4] Defendant argues leave to amend should be denied as futile, as Plaintiff cannot plead any facts sufficient to establish such a claim. [Doc. No. 15 at n.1]

In broad terms, 42 U.S.C. § 1981 is intended to prohibit racial discrimination in the making or enforcement of contracts. *Gratz v. Bollinger*, 539 U.S. 244 at n.23, 123 S. Ct. 2411, 2431, 156 L. Ed. 2d 257 (2003) (*citing McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295–296, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). Harris does not allege that he was the subject of racial discrimination by Defendant, or that Defendant interfered with Plaintiff's ability to make or

enforce contracts on the basis of such discrimination. Therefore, Defendant's motion as to Harris' § 1981 claim is granted. The Court further concludes that amendment of this claim would be futile in light of the nature of the incidents and conduct alleged in the Complaint, which involve no contract or contractual relationship.

## D. CLAIMS AGAINST DEFENDANT IN HIS INDIVIDUAL CAPACITY

Defendant argues that Harris' claims against Defendant in his individual capacity should be dismissed because Harris fails to allege that Defendant was personally involved with any violation of Harris' rights. [Doc. No. 4-1 at 16-17] Plaintiff merely responds in a conclusory fashion that the allegations of the Complaint are sufficient to sustain a claim against Defendant in his personal capacity.[7]

In order to state a claim against Defendant in his individual capacity, Harris must allege specific conduct on the part of Defendant giving rise to a constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)(*citing Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996)). Conclusory allegations are insufficient. *Id.* Harris alleges that Defendant is personally liable for:

> [f]ailing to establish and/or maintain policies, procedures, training and/or supervision of his staff and other employees. . . [f]ailing to promulgate proper polices and procedures which would assure that the employees of the Mamou Police Department would adhere to proper standards. . . violating polices and/or procedures and/or general orders applicable under the circumstances . . . failing to adhere to proper standards. . .[and] [f]ailing to follow all internal procedures, safeguards and protocol required by generally accepted law enforcement procedures and/or [Mamou Police Department] procedures.

---

[7] In response to Defendant's argument regarding Plaintiff's individual capacity claims, Plaintiff's Opposition states simply that "...Plaintiff reiterates the law and argument from above...." [Doc. No. 10 at 4] It is unclear which law and argument Plaintiff intends to reiterate, however, the Court construes this statement to mean that Plaintiff reiterates the law and argument in favor of maintaining his *Monell* claim, which is discussed below.

[Doc. No. 1 at ¶ 24] Yet, Harris includes no factual allegations showing that Defendant personally engaged in any of the conduct alleged, nor does he identify any policies, procedures, safeguards, orders, or protocols that Defendant personally followed, implemented, violated, or failed to implement. Harris therefore fails to state claims against Defendant in his personal capacity. Because the Court will grant Harris leave to replead this claim, the Court will deny Defendant's motion to dismiss, without prejudice to Defendant's right to re-urge the motion in the event Harris files amended or supplemental pleadings as to this claim.

## E. MALICIOUS PROSECUTION

Defendant next seeks dismissal of Harris' state law claim of malicious prosecution, arguing that (1) there was probable cause for Plaintiff's arrest, and (2) Plaintiff does not allege that Defendant acted with malice in commencing or continuing the criminal proceeding. [Doc. No. 4-1 at 18-19] Harris contends that there was no probable cause for his arrest, that malice can be inferred from the lack of probable cause, and that he can show that Defendant acted in reckless disregard of his rights. [Doc. No. 15 at 4]

Under Louisiana law, a malicious prosecution claim requires proof of each of the following elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages to the plaintiff. *Vidrine v. United States*, 846 F. Supp. 550, 558–59 (W.D. La. 2011)(*citing Jones v. Soileau*, 448 So.2d 1268, 1271 (La.1984)). A favorable termination, in general, is a disposition that shows the court "passed on the merits of the charge in such circumstances as to suggest the innocence or non-liability of the malicious prosecution plaintiff." *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15), 168 So. 3d 362,

368. This includes the voluntary dismissal of a prosecution by a district attorney under La. C.Cr.P. Art. 691 (a *nolle prosequi*) when prosecution is not reinstated by the district attorney. *Lemoine*, 168 So. 3d. Dismissal of a charge by a prosecuting officer prior to trial creates a rebuttable presumption of malice and a separate rebuttable presumption of lack of probable cause, and shifts the burden of showing probable cause and lack of malice to the defendant. *Smith v. City Bank & Tr. Co.*, 2018-664 (La. App. 3 Cir. 5/1/19), 271 So. 3d 263, 267. If all elements other than damages are established, damages are presumed. *Vidrine at* 560.

There is no dispute that Harris was the defendant in a prior criminal proceeding that was terminated prior to trial through voluntary dismissal by the district attorney, and therefore in Harris' favor. The fact that the prior proceeding was dismissed prior to trial creates a presumption of malice as well as a presumption of lack of probable cause. However, Plaintiff has neither asserted that Defendant was the legal cause of the criminal proceeding, nor asserted facts supporting such a claim. As stated above, the Court construes the Complaint as making claims against Defendant in his official capacity only in certain respects.[8] However, Plaintiff explicitly states that Defendant McGee is being sued in his individual capacity. [Doc. No. 1 at ¶¶ 13, 24] Plaintiff asserts no facts supporting a claim that Defendant McGee, personally, was the legal cause of the commencement of the relevant criminal prosecution.[9] Nevertheless, because the Court will grant Harris leave to replead this claim, the Court will deny Defendant's motion to dismiss, without

---

[8] For example, the Court construes the Complaint as attempting to plead claims against McGee in his official capacity for purposes of alleging municipal liability arising from actions taken pursuant to policies and/or practices of the Mamou Police Department.

[9] Whether Defendant McGee, in his official capacity as the chief of police, or any governmental entity can be deemed to be the legal cause of Harris' criminal prosecution (which appears to have been instituted by another officer of the Mamou Police Department) is as yet unclear and unaddressed by either party.

prejudice to Defendant's right to re-urge the motion in the event Harris files amended or supplemental pleadings as to this claim.

## F. RIGHT TO SPEEDY TRIAL

As to Plaintiff's claim of a violation of his right to a speedy trial,[10] Defendant argues that (1) Defendant cannot be held liable for such a violation because the Chief of Police does not have authority or ability to move a criminal case forward, (2) speedy trial claims are no longer available once criminal charges are dismissed, (3) even if a speedy trial claim were available, the delay in Plaintiff's case was not presumptively prejudicial, and (4) this Court cannot grant Plaintiff relief under a speedy trial theory because the only relief available is dismissal of criminal charges, which has already occurred. [Doc. No. 4-1 at 20-21; Doc. No. 15 at 7-10]. Plaintiff contends that the ultimate dismissal of his criminal charges shows that the case was not being moved forward properly. [Doc. 10 at 4-5]

The Sixth Amendment to the U.S. Constitution provides, among other things, that criminal defendants have the right to a "speedy and public trial." U.S. Const. amend. VI. While some amount of delay is to be expected as a practical matter, "[t]he right to a speedy trial is . . . rooted in hard reality in the need to have charges promptly exposed." *Dickey v. Fla.*, 398 U.S. 30, 37–38, 90 S. Ct. 1564, 1569, 26 L. Ed. 2d 26 (1970). "[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Id.* In Louisiana, the charging authority upon whom this duty falls is the district attorney. Each district attorney has authority over the criminal prosecutions in her district, including broad discretion

---

[10] The Complaint does not expressly make a speedy trial claim, stating only that Plaintiff "at no point waived his Constitutional (state or federal) or statutory rights to a Speedy Trial." [Doc. No. 1 at ¶ 21] However, Plaintiff's Opposition argues that his claim for a violation of his right to a speedy trial should not be dismissed. [Doc. No. 10 at 4-5]

regarding whether to prosecute crimes, as well as whom, when, and how to prosecute them. *State v. Franklin*, 2013-1489 (La. App. 4 Cir. 6/11/14), 147 So. 3d 231, 237, writ denied, 2014-1326 (La. 2/13/15), 159 So. 3d 460. In Louisiana, therefore, the duty to ensure that a criminal defendant is tried promptly and that his right to a speedy trial is protected falls on the district attorney. As there is no allegation that Defendant ever served in the role of district attorney or had any decision-making role in Harris' prosecution, Harris cannot maintain a Sixth Amendment speedy trial claim against Defendant. Defendant's motion as to Plaintiff's speedy trial claim is therefore granted.

## G. FAULTY INVESTIGATION

Defendant contends that Plaintiff fails to state a claim against Defendant for a faulty or deficient investigation because there is no constitutional right to any investigation, much less a fault-free investigation. [Doc. No. 4-1 at 17-18] Plaintiff counters that the cases cited by Defendant address the subject of an "unreasonable" investigation rather than the "faulty" investigation alleged in the Complaint. [Doc. No. 10 at 4] Defendant responds that there is no legal difference between the terms. [Doc. No 15 at 6]

In *Shields v. Twiss*, 389 F.3d 142, 151-52 (5th Cir. 2004), the Fifth Circuit held that, with respect to an "unreasonable investigation" claim, the plaintiff could point to "no legal basis for a Section 1983 action of this sort." *See also, Burrell v. Adkins*, 2007 WL 4699166 at * 9 (W.D. La. Oct. 22, 2007) (explaining that there "is no constitutional right to an investigation" and, therefore, "there is no constitutional basis for a Section 1983 action based on an 'unreasonable investigation.'") (*citing Shields* and *Mitchell v. McNeil*, 487 F.3d 374 (6th Cir. 2007)). In *Shields*, the plaintiff alleged that the defendants' conduct – the failure to supervise and the failure to train – prevented the investigator on the case from conducting investigations "properly." 389 F.3d at 145. As a result, the investigator allegedly made critical mistakes in lineups and failed to uncover

evidence that would have exonerated the plaintiff in his criminal case. *Id.* The Court agrees with Defendant that there is no real distinction between the "faulty" investigation alleged in Harris' complaint and the "unreasonable" investigation that, according to the Fifth Circuit in *Shields*, does not give rise to a § 1983 claim.

Although the Fifth Circuit has recognized that there is no independent claim for an unreasonable investigation, there may be circumstances under which investigatory conduct amounts to an independent violation of a specific constitutional guarantee, such as an investigation that results in a wrongful arrest or false imprisonment in violation of the Fourth Amendment. Such a claim must, however, be judged under the standards of a Fourth Amendment wrongful arrest or false imprisonment claim. Here, any such Fourth Amendment claim for wrongful arrest or false imprisonment has prescribed.

Moreover, even if Harris could state a claim based on the investigation of his case, the Court finds that the Complaint does not allege that Defendant McGee engaged in a "faulty" investigation of Harris' case. Rather, it alleges that "the Mamou Police Department's policy, practice and custom of engaging in faulty investigations, false arrests and false imprisonment has been promulgated, effectuated and/or enforced in bad faith as a matter of express policy or custom and contrary to clearly established law." [Doc. No. 1 at ¶ 15] Plaintiff therefore alleges "faulty investigations" to be one component of the policies, enacted and/or effectuated by the Mamou Police Department, which allegedly run counter to clearly established law.[11] The Court therefore

---

[11] This is in contrast to the way Plaintiff discusses his speedy trial claim. In the Complaint, Harris does not explicitly assert either a speedy trial claim or a faulty investigation claim. But, in his Opposition, Harris affirmatively argues that his "claims for violation of his Constitutional right to a speedy trial should not be dismissed." [Doc. No. 10 at 4-5] The Opposition includes no such language regarding a claim of faulty investigation.

construes this statement not as a separate claim for faulty investigation, but as a component of Plaintiff's *Monell* claim for municipal liability, which is discussed below.

## H. MUNICIPAL LIABILITY[12]

To the extent Harris asserts claims against Defendant McGee in his official capacity, McGee argues that Harris' *Monell* claim of municipal liability should be dismissed because Harris fails to allege facts tending to show the existence of custom(s) and/or policy(ies) which caused violation(s) of his rights. [Doc. No. 4-1 at 12-15] Harris argues that his Complaint includes all the allegations necessary to state a § 1983 claim against a municipality or local governmental unit for misconduct of its employees – namely, that an official policy or custom was the cause in fact of a deprivation of protected rights, and that injury resulted from the execution of official policy or custom. [Doc. No. 10 at 3-4] Harris further argues that he described these policies generally because he was not privy to their specific names at the time the Complaint was filed, and therefore further inquiry into those policies or customs is relevant at this time. [Doc. No. 10 at 4] Defendant attempts to preempt any request for leave by Harris to amend the Complaint to plead a *Monell* claim with specificity, arguing that any such request should be denied as futile because Harris cannot plead facts sufficient to establish such a claim. [Doc. No. 15 at n.1]

A claim of municipal liability requires an underlying constitutional violation. *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, 138 S. Ct. 510, 199 L. Ed. 2d 387 (2017). While a municipality may not be held

---

[12] The Court construes as a municipal liability claim Plaintiff's allegations that his constitutional rights were violated by the Mamou Police Department, acting through its employees pursuant to policy and custom, and Defendant McGee, acting both as an employee (*i.e.,* in his individual capacity) and policy-maker of the Mamou Police Department (*i.e.* in his official capacity), and that the violations were committed pursuant to the Department's policy, practice, and custom. [Doc. No. 1 at 3-5] While this claim is not made in such explicit terms, Plaintiff does challenge Defendant's request that his claim of municipal liability be dismissed. [Doc. No. 10 at 3-4]

liable under § 1983 for the violation of constitutional rights on a theory of vicarious liability, it may be liable where allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* To establish liability under § 1983, a Plaintiff must show that (1) an official policy, (2) that is promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right. *Id.* For these purposes, official policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Id.* "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Applying this analysis here, Harris' factual allegations do not identify actions taken by Defendant McGee, instances of other constitutional violations, a pattern of behavior by Defendant McGee or any other official, nor any description of a policy enacted by the Town of Mamou or its officers, the origin or execution of such policy, or a connection of any such policy to any other constitutional violation. Rather, Harris makes only formulaic, conclusory assertions such as: Defendant McGee was a policy-maker within the Mamou Police Department, and acted at all relevant times within the scope of his employment by that department [Doc. No. 1 at ¶ 13]; at all relevant times, all described law enforcement officials acted under color of state law, as employees of their employer, and engaged in conduct incidental to the performance of their law enforcement duties [Doc. No. 1 at ¶ 14]; the Mamou Police Department has a "policy, practice and custom of engaging in faulty investigations, false arrests and false imprisonment" [Doc. No. 1 at ¶ 15]; and Defendants have "promulgated, implemented, enforced and/or failed to rectify a policy, practice and custom allowing officers and deputies to engage in the sort of constitutional violations averred

herein without proper oversight or sufficient corrective action. [Doc. No. 1 at ¶ 16] These conclusory allegations are similar to those made in *Spiller*, in which the plaintiff alleged that a police officer "was acting in compliance with the municipality's customs, practices or procedures" and that certain generally-described polices "led to unspecified unconstitutional arrests and confinements." *Spiller*, 130 F.3d at 167 (internal quotations omitted). In *Spiller*, the Fifth Circuit found the allegations insufficiently specific to state a claim against the defendant. Similarly, Harris makes only conclusory allegations without asserting any facts that support the elements of a *Monell* claim. However, because the Court will grant Harris leave to replead this claim, the Court will deny Defendant's motion to dismiss at this time, without prejudice to Defendant's right to re-urge the motion in the event Harris files amended or supplemental pleadings as to this claim.

## I.    LEAVE TO REPLEAD

Harris requests leave to replead if Defendant's motion is granted. Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013). One key exception to this generous standard is where the amendment would be futile. *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)." *Id.* In other words, if an amendment would be subject to the same grounds of dismissal as under a defendant's original Rule 12(b)(6) motion, amendment would be futile and the court should deny leave to amend. Here, the Court concludes that the following claims should be dismissed with prejudice and leave to amend denied because any attempt to amend and cure the defects in these claims would be futile:

(1) Harris' Fourth Amendment and state law claims for wrongful arrest and false imprisonment because those claims have prescribed;

(2) Harris' claim under the Fifth Amendment because the events detailed in the complaint fail to show that any federal actor was involved in the conduct alleged in the complaint, and Harris identifies no potential federal actor in response to the Defendant's motion to dismiss;

(3) Harris' Eighth Amendment claim because Harris was never convicted and sentenced to imprisonment, and any allegation concerning his brief period of pre-trial detention does not give rise to a claim under the Eighth Amendment;

(4) Harris' Ninth Amendment claim because the Ninth Amendment does not confer any substantive rights that can be pursued under § 1983;

(5) Harris' claim under 42 U.S.C. § 1981 because it does not appear from the events and conduct outlined in the complaint that plaintiff can allege discrimination with respect to a contract or contractual relationship and Harris identifies no such contract or contractual relationship in his Opposition to the Motion;

(6) Harris' claim based on a "faulty investigation" to the extent that he is challenging the investigation of his own case because such claims are not cognizable under § 1983 and any related Fourth Amendment claim for wrongful arrest or false imprisonment would be barred by prescription; and

(7) Harris' Sixth Amendment claim because he has not pled any facts suggesting Defendant was the relevant District Attorney or otherwise had authority over the prosecution of Harris' criminal case.

The court will grant leave to replead the following claims on the grounds that amendment would not be futile:

(1) Harris' Fourteenth Amendment claims;

(2) Harris' malicious prosecution claim under Louisiana law;

(3) Harris' claims against the Defendant in an individual capacity; and

(4) Harris' *Monell* claim.

With respect to these claims, the court will deny Defendant's Motion to Dismiss without prejudice to Defendant's right to re-urge the motion in the event Plaintiff files amended or supplemental pleadings.

## IV.
### CONCLUSION

For the reasons set forth above, Defendant McGee's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted [Doc. No. 4] is GRANTED IN PART and DENIED IN PART.

As to the following claims, Defendant's motion is GRANTED, the claims are DISMISSED WITH PREJUDICE, and leave to replead is DENIED: false arrest and false imprisonment under the Fourth Amendment and state law; violations of the Fifth Amendment; violations of the Eighth Amendment; violations of the Ninth Amendment; violations of 42 U.S.C. § 1981; violation of the Sixth Amendment; and claims based on a faulty investigation, to the extent Plaintiff challenges the investigation in his own case.

As to the following claims, Defendant's motion is DENIED WITHOUT PREJUDICE to his right to re-urge in the event Plaintiff files amended or supplemental pleadings, and leave to replead is GRANTED: violations of the Fourteenth Amendment; malicious prosecution under Louisiana law; claims against Defendant in his individual capacity; and municipal liability. Amended or supplemental pleadings as to these claims shall be filed no later than fourteen (14) days from the date of this ruling. Defendant shall have seven (7) days from the filing of such amended or supplemental pleadings to re-urge his motion to dismiss.

THUS DONE AND SIGNED in Chambers on this 3rd day of September, 2019.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE